In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1212
UNITED STATES OF AMERICA,
 Plaintiff-Appellee,
 v.

TROY C. WILLIAMS,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court for the
 Eastern District of Wisconsin.
 No. 2:00-CR-00242 — Brett H. Ludwig, Judge.
 ____________________

 ARGUED SEPTEMBER 30, 2022 — DECIDED APRIL 13, 2023
 ____________________

 Before WOOD, ST. EVE, and KIRSCH, Circuit Judges.
 WOOD, Circuit Judge. Troy Williams appeals the denial of
his motion under 18 U.S.C. § 3582(c)(1)(A) for a reduced sen-
tence. He argues that the district court erred in holding that it
was not permitted to consider whether Williams’s unconsti-
tutionally imposed mandatory life sentence contributed to
“extraordinary and compelling reasons” for the reduction of
his sentence. § 3582(c)(1)(A)(i). In so doing, the court relied on
2 No. 22-1212

our decision in United States v. Thacker, 4 F.4th 569 (7th Cir.
2021). Williams wants us to reconsider that holding.
 We decline the invitation for several reasons. First, it
would make no diﬀerence to Williams’s case. The district
court held in the alternative that even if Williams was eligible
for a reduction in his sentence, this relief was not warranted
in light of the factors spelled out in 18 U.S.C. § 3553(a). Sec-
ond, we see no reason to change our analysis at this time. We
are aware that diﬀerent approaches have arisen among the
circuits regarding the bounds of district court discretion to
ﬁnd extraordinary and compelling reasons for early release—
speciﬁcally, whether the two-step process we use is the cor-
rect one, or if a more holistic approach is called for. The
United States Sentencing Commission is in the process of
studying the issue, and recently it has proposed deﬁning “ex-
traordinary and compelling reasons” to include circum-
stances in which “[t]he defendant is serving a sentence that is
inequitable in light of changes in the law.” Sentencing Guide-
lines for United States Courts, 88 Fed. Reg. 7180, 7184 (pro-
posed Feb. 2, 2023). But this eﬀort is still at an early stage—so
early that we see no value in speculating on what such a
change would mean. Until the Commission deﬁnitively says
otherwise, we will not deviate from our current understand-
ing. We therefore aﬃrm the judgment of the district court.
 I
 Williams was a key facilitator in a years-long cocaine traf-
ﬁcking scheme. In 2001, a jury convicted him of federal drug
and conspiracy charges. See 18 U.S.C. §§ 841(a)(1), 846. At sen-
tencing, Williams faced a statutory 20-year mandatory mini-
mum sentence; his Guidelines “range” (then mandatory) was
life. The district court accordingly imposed two concurrent
No. 22-1212 3

life sentences, one per count, and we aﬃrmed. United States v.
Knight, 342 F.3d 697 (7th Cir. 2003).
 After Williams exhausted his avenues for postconviction
relief, two major shifts in criminal sentencing occurred. First,
in 2005 the Supreme Court ruled that the mandatory sentenc-
ing structure of the Guidelines violated the Sixth Amend-
ment. United States v. Booker, 543 U.S. 220 (2005). It cured that
problem by making the Guidelines advisory only. Second, in
2018 the First Step Act amended sentencing provisions for fel-
ony drug offenses in a manner that would have reduced Wil-
liams’s statutory mandatory minimum, had it been in effect
at the time of his crimes. Pub. L. No. 115-391, § 401(a)(2)(i),
132 Stat. 5194, 5220. Neither of these changes helped Williams,
however, because neither Booker nor the relevant provisions
of the First Step Act provided relief for defendants whose sen-
tences were already final. See McReynolds v. United States, 397
F.3d 479, 480 (7th Cir. 2005) (holding that Booker does not ap-
ply retroactively); First Step Act § 401(c) (amendments apply
“to any offense that was committed before the date of enact-
ment of this Act, if a sentence for the offense has not been im-
posed as of such date of enactment”).
 In 2021, Williams moved for a sentence reduction under
18 U.S.C. § 3582(c)(1)(A), commonly known as the compas-
sionate release statute. Williams argued that his pre-Booker
mandatory life sentences, combined with his exemplary
prison record, constituted “extraordinary and compelling rea-
sons” for early release. While his motion was pending, we de-
cided Thacker, which explained that district courts had to
break down the compassionate release process into two steps.
4 F.4th at 573. At Step 1, where a defendant’s eligibility for
sentencing relief is determined, the district court may not
4 No. 22-1212

circumvent the nonretroactive nature of the First Step Act by
characterizing the very changes to the sentencing ranges
made by that Act as extraordinary and compelling reasons. Id.
Step 2 is relevant only for those prisoners who can show ex-
traordinary and compelling reasons in some other way. At
that point, the court has wide discretion to consider anything
relevant, including changes in the sentencing regime. Id.
 The district court denied Williams’s motion, reasoning
that “under the rationale of Thacker, the fact that Williams
would not face a mandatory life sentence if sentenced today
is not an extraordinary and compelling reason for a lower sen-
tence.” The court also found “for the sake of completeness”
that a sentence reduction would be inappropriate under the
section 3553(a) sentencing factors.
 On appeal, Williams argues that (1) the district court erred
in concluding that it was barred from considering the fact that
today he would not be subject to the pre-Booker mandatory
life sentence at the eligibility stage of its compassionate re-
lease analysis, and (2) the district court’s section 3553(a) anal-
ysis was an insufficient alternative basis for denying his mo-
tion.
 II
 We review the denial of a motion for compassionate re-
lease for abuse of discretion; we consider any underlying
questions of law de novo. United States v. McSwain, 25 F.4th
533, 537 (7th Cir. 2022); United States v. Saunders, 986 F.3d
1076, 1078 (7th Cir. 2021). “A decision based on a mistake of
law is itself an abuse of discretion.” United States v. Kur-
zynowski, 17 F.4th 756, 759 (7th Cir. 2021).
No. 22-1212 5

 A
 A district court may grant a motion for a reduced sentence
if (1) “extraordinary and compelling reasons warrant such a
reduction,” (2) the reduction is “consistent with applicable
policy statements issued by the Sentencing Commission,” and
(3) the reduction is appropriate in light of the section 3553(a)
sentencing factors. § 3582(c)(1)(A). Although the Sentencing
Commission is in the process of updating its compassionate
release guidance, there is currently no binding policy state-
ment defining “extraordinary and compelling reasons” for
early release. See United States v. Gunn, 980 F.3d 1178, 1180
(7th Cir. 2020). And Congress has provided little statutory
guidance on how district courts should interpret the term,
apart from the stipulation that “[r]ehabilitation of the defend-
ant alone shall not be considered an extraordinary and com-
pelling reason.” United States v. Peoples, 41 F.4th 837, 841 (7th
Cir. 2022) (quoting 28 U.S.C. § 994(t)).
 But we have found significance in the fact that Congress
did not make its changes in sentences for violations of section
841 retroactive. We reasoned in Thacker that a nonretroactive
statutory sentencing change cannot be transformed into one
that is retroactive by the device of compassionate release.
4 F.4th at 574. And we have stuck to that decision, in the face
of numerous appeals that have challenged our position. See,
e.g., United States v. Brock, 39 F.4th 462 (7th Cir. 2022); United
States v. King, 40 F.4th 594 (7th Cir. 2022). At the same time,
we consistently have said that the district courts may consider
the retroactively more lenient punishment for people who can
demonstrate the necessary extraordinary and compelling rea-
sons for relief.
6 No. 22-1212

 Starting with Thacker, we examined whether an inmate
who was sentenced to so-called stacked penalties under 18
U.S.C. § 924(c) could request compassionate release after the
First Step Act amended section 924(c) to limit the convictions
that qualify as “second or subsequent” to the crime of convic-
tion. 4 F.4th at 571; First Step Act § 402(a). Our conclusion was
that “the discretionary sentencing reduction authority con-
ferred by § 3582(c)(1)(A) does not permit—without a district
court finding some independent ‘extraordinary or compel-
ling’ reason—the reduction of sentences lawfully imposed be-
fore the effective date of the First Step Act’s amendment to
§ 924(c).” Thacker, 4 F.4th at 575. We did so in reliance on Con-
gress’s deliberate choice to give the amendments to sec-
tion 924(c) only prospective effect. Id. at 573. There was
simply not enough daylight, we thought, between retroactive
application of the First Step Act’s reforms and a sentence re-
duction under section 3582(c)(1)(A) made in reliance on the
First Step Act’s reforms. We made clear, however, that if the
extraordinary and compelling threshold is met on other, in-
dependent grounds, then district courts may consider con-
temporary sentencing law in determining the appropriate
length of a sentence reduction. Id. at 575.
 Our decisions in United States v. Brock and United States v.
King applied the Thacker principle to other settings. In those
cases, we considered whether inmates could base a request
for compassionate release on the ground that they received
statutory sentencing enhancements for which, after our deci-
sion in United States v. Ruth, 966 F.3d 642 (7th Cir. 2021), they
would no longer be eligible if sentenced today. Unlike in
Thacker, this was not a situation in which Congress had spo-
ken directly to the retroactivity question, but we reasoned
that defendants should not be permitted to “circumvent the
No. 22-1212 7

normal process for challenging potential sentencing errors, ei-
ther through the direct appeal process or collaterally through
a 28 U.S.C. § 2255 motion.” Brock, 39 F.4th at 465 (quoting
Thacker, 4 F.4th at 574). We held that “judges must not rely on
non-retroactive statutory changes or new judicial decisions”
when deciding whether an inmate has shown extraordinary
and compelling reasons for relief. King, 40 F.4th at 595; accord
Brock, 39 F.4th at 466.
 The district court concluded that these principles apply
with equal force to Williams, who was given a mandatory life
sentence under the mandatory Guidelines framework, which
Booker later found to be unconstitutional. The district court’s
reasoning parallels that of the Sixth Circuit, the only circuit
that has directly addressed whether pre-Booker sentences can
establish extraordinary and compelling circumstances. See
United States v. Hunter, 12 F.4th 555 (6th Cir. 2021). Like us, the
Sixth Circuit had previously decided that the First Step Act’s
nonretroactive amendments could not supply the basis for
compassionate release. See United States v. Jarvis, 999 F.3d 442,
445–46 (6th Cir. 2021). It concluded that “[t]he holding and
reasoning in Jarvis apply with equal force” to the context of
pre-Booker sentences. Hunter, 12 F.4th at 564. The Eighth and
D.C. Circuits likewise have declined to consider subsequent
changes in sentencing law as extraordinary and compelling
reasons for relief, though they have not considered the pre-
Booker sentence issue specifically. See United States v. Crandall,
25 F.4th 582, 586 (8th Cir. 2022) (“[A] non-retroactive change
in law, whether offered alone or in combination with other
factors, cannot contribute to a finding of ’extraordinary and
compelling reasons’ for a reduction in sentence under
§ 3582(c)(1)(A).”); United States v. Jenkins, 50 F.4th 1185, 1200
(D.C. Cir. 2022) (“[W]e conclude that legal errors at
8 No. 22-1212

sentencing—including those established by the retroactive
application of intervening judicial decisions—cannot support
a grant of compassionate release.”).
 The wrinkle that deserves acknowledgement is that our
view does not appear to be shared by several of our sister cir-
cuits. Though they have not squarely ruled on the issue pre-
sented in this case, the First, Second, Fourth, and Ninth Cir-
cuits have all kept the door open to motions like Williams’s.
These circuits have declined to impose a categorical limit on
a district court’s discretion to determine what constitutes ex-
traordinary and compelling reasons for compassionate re-
lease. 1
 Similarly, the First, Fourth, and Ninth Circuits have held
that in the absence of binding guidance from the Sentencing
Commission, “district courts may consider non-retroactive

 1 See United States v. Trenkler, 47 F.4th 42, 48 (1st Cir. 2022) (“[U]ntil
the Sentencing Commission speaks, the only limitation on what can be
considered an extraordinary and compelling reason to grant a prisoner-
initiated motion is rehabilitation.” (citing United States v. Ruvalcaba, 26
F.4th 14, 25–26 (1st Cir. 2022))); United States v. Brooker, 976 F.3d 228, 237–
38 (2d Cir. 2020) (“The only statutory limit on what a court may consider
to be extraordinary and compelling is that ‘[r]ehabilitation … alone shall
not be considered an extraordinary and compelling reason.’” (quoting 28
U.S.C. § 994(t))); United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020)
(“District courts are empowered to consider any extraordinary and com-
pelling reason for release that a defendant might raise.” (cleaned up));
United States v. Chen, 48 F.4th 1092, 1099 (9th Cir. 2022) (“Through
§ 3582(c)(1)(A) and § 994(t), Congress has demonstrated that it can, and
will, directly limit what constitutes extraordinary and compelling reasons.
It is therefore hard to reconcile the argument that we should infer a cate-
gorical bar on extraordinary and compelling reasons with Congress’s
prior decisions not to create such stark limitations on a district court’s dis-
cretion.”).
No. 22-1212 9

changes in sentencing law, in combination with other factors
particular to the individual defendant, when analyzing ex-
traordinary and compelling reasons for purposes of
§ 3582(c)(1)(A).” United States v. Chen, 48 F.4th 1092, 1098 (9th
Cir. 2022). 2 The Second Circuit has held even more broadly
that district courts are not barred from considering, in combi-
nation with other factors, lawfully imposed but arguably “un-
just” or “unusually long” sentences. See United States v.
Brooker, 976 F.3d 228, 238 (2d Cir. 2020) (holding that a district
court would not abuse its discretion by granting a sentence
reduction based on a combination of an inmate’s extensive re-
habilitation, young age at the time of the crime, and “the sen-
tencing court’s statements about the injustice of his lengthy
sentence”).
 The Supreme Court has not weighed in on this disagree-
ment. There are serious arguments to be considered on both
sides. On the one hand, the Court’s decisions have repeatedly
rejected categorical rules in the sentencing context and

 2 Accord Ruvalcaba, 26 F.4th at 16 (“[A] court may consider the FSA’s
non-retroactive changes in sentencing law on an individualized basis,
grounded in a defendant’s particular circumstances, to determine whether
an extraordinary and compelling reason exists for compassionate re-
lease.”); McCoy, 981 F.3d at 288 (“We see no error in [the district court’s]
reliance on the length of the defendants’ sentences, and the dramatic de-
gree to which they exceed what Congress now deems appropriate, in find-
ing ‘extraordinary and compelling reasons’ for potential sentence reduc-
tions.”); United States v. McGee, 992 F.3d 1035, 1047 (10th Cir. 2021) (hold-
ing that Congress’s choice not to mandate retroactive application of the
First Step Act did not indicate that “Congress intended to prohibit district
courts, on an individualized, case-by-case basis, from granting sentence
reductions under § 3582(c)(1)(A)(i) to some of those defendants”).
10 No. 22-1212

emphasized the importance of preserving the sentencing
judge’s discretion “to consider every convicted person as an
individual and every case as a unique study in the human fail-
ings that sometimes mitigate, sometimes magnify, the crime
and the punishment to ensue.” Gall v. United States, 552 U.S.
38, 52 (2007) (quoting Koon v. United States, 518 U.S. 81, 113
(1996)).
 Later Supreme Court decisions reflect this holistic ap-
proach; in different contexts, they have rejected judicially im-
posed categorical bars on what district courts may consider at
sentencing. See, e.g., Kimbrough v. United States, 552 U.S. 85
(2007); Pepper v. United States, 562 U.S. 476 (2011); Dean v.
United States, 581 U.S. 62 (2017). Recently, the Court reminded
us that “[i]t is only when Congress or the Constitution limits
the scope of information that a district court may consider in
deciding whether, and to what extent, to modify a sentence,
that a district court’s discretion to consider information is re-
strained.” Concepcion v. United States, 142 S. Ct. 2389, 2396
(2022).
 On the other hand, these decisions do not necessarily fore-
close the two-step framework we have employed in Thacker
and its progeny—a framework that contemplates broad dis-
cretion at step two. The Court has never weighed in on what,
if any, application the cases we just mentioned may have
when it comes to “the threshold question whether any given
prisoner has established an ‘extraordinary and compelling’
reason for release.” Peoples, 41 F.4th at 842 (quoting King, 40
F.4th at 596).
 We have no crystal ball, and so we do not know which
path the Court is likely to take, should it decide to resolve this
issue and not leave the ultimate choice up to the Sentencing
No. 22-1212 11

Commission. All we can say is that the issue is teed up, and
either the Commission or the Court (we hope) will address it
soon. This case, however, is not a suitable vehicle for tackling
this problem, because the district court provided alternative
grounds to aﬃrm the denial of Williams’s motion. We there-
fore turn to that aspect of the appeal.
 B
 The district court held in the alternative that the sec-
tion 3553(a) factors weighed against Williams’s release. Alt-
hough it considered Williams’s time served in prison, age,
self-motivated rehabilitation, and family support, it ulti-
mately concluded that Williams’s life sentence remained ap-
propriate and was not greater than necessary to comply with
the purposes of sentencing. § 3553(a). Indeed, the court found
that reducing Williams’s sentence would fail “to reflect the
seriousness of the offense” or “promote respect for the law”
given the gravity of Williams’s participation in a dangerous
criminal enterprise. § 3553(a)(2)(A).
 Williams argues that the district court’s section 3553(a)
analysis is an “advisory opinion” that we should disregard.
But it is no such thing; it provides an independent basis for
the court’s resolution of his motion. The district court acted
within its discretion in its section 3553(a) analysis, and “just
one good reason for denying a compassionate-release motion
suffices.” United States v. Rucker, 27 F.4th 560, 563 (7th Cir.
2022).
 We AFFIRM the district court’s denial of Williams’s compas-
sionate release motion.